UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

KANEILIA M. WILLIAMS                                              PLAINTIFF

vs.                                                 Civil No. 4:23-CV-167-GHD-JMV

CITY OF INDIANOLA, MISSISSIPPI;
MAYOR KEN FEATHERSTONE, individually
and officially; ALDERMAN MARVIN ELDER,
individually and officially; and JOHN DOES 1-5                    DEFENDANTS

## MEMORANDUM OPINION

Presently before the Court is Defendants City of Indianola, Mississippi; Mayor Ken Featherstone; and Alderman Marvin Elder's (collectively "Defendants") Motion for Summary Judgment [Doc. No. 76]. This is in response to Plaintiff Kaneilia Williams's ("Plaintiff") Complaint [1] several claims against Defendants. Specifically, she claims harassment, discrimination, and constructive discharge in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); retaliation in violation of Title VII and 42 U.S.C. § 1983; equal protection violations of 42 U.S.C. § 1983; conspiracy to interfere with civil rights in violation of 42 U.S.C. § 1985; as well as discrimination and harassment in violation of the Americans with Disability Act ("ADA"). Upon due consideration, the Court finds Defendants' Motion for Summary Judgment [76] should be granted and Plaintiff's claims dismissed for the reasons set forth in this opinion.

## I.    Background

Plaintiff began her employment as the city clerk of Indianola, Mississippi, in April 2021 under Mayor Steve Rosenthal's administration [83]. Prior to starting, Plaintiff had obtained an undergraduate degree and a master's degree, and before she completed her tenure, she had obtained certifications from the Mississippi Municipal Clerks and Collectors Association and the

International Institute of Municipal Clerks [83; 82-4, pp. 64-65]. In January 2022, Defendant Ken Featherstone became mayor of Indianola, and Plaintiff continued as City Clerk [76; 83].

On February 18, 2022, Plaintiff's son was diagnosed with cancer [82-2, p. 19]. It is unclear whether disputes between Plaintiff and the mayor concerning her remote work began prior to this diagnosis. However, this was the same day Mayor Featherstone sent an email with a subject line of "Excessive Time Off Notice" to Plaintiff stating, "I need you to officially make request for time off regardless of the circumstance via email correspondence" [82-5, p. 84]. He added, "As with all City employees, you can only take the available time off that you have accrued regardless of whether you are a salaried or hourly employee" [*Id.*]. Plaintiff replied in relevant part, "I will send you an email in the future and let you know when future appointments occur" [*Id.* at 87].

Mayor Featherstone replied to Plaintiff on February 23, 2022, and reiterated the need for Plaintiff "to be present on site M-F from 8-5 during normal business operations" [*Id.* at 81]. Additionally, Mayor Featherstone suggested "it may be in [Plaintiff's] best interest to perhaps take a Family Medical Leave of Absence," provided a statutory outline of Plaintiff's duties as city clerk, and provided FMLA guidance from the U.S. Department of Labor [*Id.* at 81-82]. Plaintiff then responded, noting she is "fully aware of [her] duties" and has "continually performed well" [*Id.* at 85]. She also stated she expects "the courtesy that has been provided to other employees who have recent [*sic*] dealt with family situations, instead of having to justify [her] time off" [*Id.*]

In light of Plaintiff's son's illness, Indianola's Board of Aldermen ("the board") took a vote on February 28, 2022, for the "approval to allow city clerk to do some work from home while her son is being treated for his illness" [82-18, p. 8].[1] This motion passed three to two with Aldermen Woods and Elder voting against [*Id.*]. The board revisited the issue of Plaintiff's remote work at

---

[1] The parties dispute whether Plaintiff *requested* the board of aldermen to allow her to work from home [82-3; 82-4, pp. 34-35].

the March 14, 2022, board of aldermen meeting where a successful vote was taken to override Mayor Featherstone's veto [*Id.*]. Alderman Elder was the sole nay vote [*Id.*]. No evidence has been provided showing where this directive was ever revoked. It was during such meetings when it is alleged Alderman Elder criticized and raised his voice at Plaintiff [83]. Further, after the veto override, Plaintiff alleges Alderman Elder "repeatedly brought up her son's medical condition during board meetings" and "even began emailing other City employees to obtain protected health information related to [her] son" [83].

Tensions remained strained as time progressed, and during a budget meeting on August 22, 2022, another dispute arose between Plaintiff and Mayor Featherstone [82-4, p. 66; 82-10, pp. 26-27]. During the meeting, Plaintiff requested a raise for an amount which Mayor Featherstone considered "very brazen" [*Id.*]. In reply to her request, Mayor Featherstone stated something along the lines of, "If you were a man, I'd say you had a big set of cojones for asking for a raise" [*Id.*; 83, p. 3]. Mayor Featherstone admits he made this statement [82-4, p. 66].

The final dispute between Plaintiff and Mayor Featherstone occurred on February 13, 2023 [82-5, p. 94]. On this occasion, Plaintiff allegedly missed a "standing meeting" with Mayor Featherstone who then called and told "her to get her ass to work" [82-4, pp. 74-75; 82-3, p. 119]. Plaintiff returned to work and explained to Mayor Featherstone she was in Jackson, Mississippi, visiting a sick relative in the hospital at the time [82-3 p. 67-68]. Plaintiff began writing her resignation letter later that day, and she officially resigned on March 3, 2023 [*Id.* at 68-69; 82-5, p. 94]. Plaintiff then filed the appropriate charge with the Equal Employment Opportunity Commission ("EEOC") [1-1] and received her Notification of Right to Sue [1-2]. Scattered throughout the record are allegations of other encounters between the Plaintiff and Defendants; however, they are so vague and conclusory as to provide little to no value to the analysis at hand.

## II. *Standard of Review*

This Court grants summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

The party moving for summary judgment bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *Id*. at 323. Under Rule 56(a), the burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324; *Littlefield v. Forney Indep. Sch. Dist*., 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc*., 61 F.3d 313, 315 (5th Cir. 1995). When the parties dispute the facts, the Court must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal citations omitted). "However, a nonmovant may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, 490 F. App'x 666, 667 (5th Cir. 2012) (per curiam) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

## III. *Discussion & Analysis*

4

Plaintiff brings several claims against Defendants including Title VII violations, equal protection violations, conspiracy to interfere with her civil rights, and ADA violations. The Court will therefore discuss each in turn beginning with Plaintiff's Title VII claims.

### A. Title VII Claims

Plaintiff brings the following claims pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"). Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such race, color, religion, *sex*, or national origin." 42 U.S.C. § 2000e-2(a)(1) (emphasis added).

### 1. Harassment

To state a *prima facie* case for a Title VII harassment claim based on a hostile work environment theory, Plaintiff must show:

> (1) [she] belonged to a protected class, (2) [she] was subject to harassment, (3) the harassment was based on [her] protected class, (4) the harassment affected a 'term, condition, or privilege of employment,' and (5) 'the employer knew or should have known of the harassment and failed to take prompt remedial action.'

*Campbell v. Garland*, No. 22-11067, 2023 WL 7266990, *3 (5th Cir. Nov. 2, 2023) (citing *Bye v. MGM Resorts Int'l, Inc.*, 49 F.4th 918, 923 (5th Cir. 2022)). As a woman, Plaintiff is a member of a protected class. Having satisfied prong one, the Court turns now to determine whether actual harassment existed in this case, and if so, whether that harassment rose to the level required by law. "Harassment generally takes the form of discriminatory intimidation, ridicule, and insult that rises to the level of hostile or abusive." *Ayorinde v. Team Ind. Serv. Inc.*, 121 F.4th 500, 509 (5th Cir. 2024) (citing *Clark v. City of Alexandria*, 116 F.4th 472, 479 (5th Cir. 2024)). At this stage in the proceedings—with the facts viewed in the light most favorable to her—Plaintiff has sufficiently alleged she was subject to some form of harassment, satisfying the second prong.

Courts consider "the totality of the employment circumstances to determine whether an environment is *objectively hostile*." *Id.* (citing *West v. City of Hous.*, 960 F.3d 736, 742 (5th Cir. 2020)) (emphasis added). Relevant factors for consideration include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "The effect on the employee's psychological well-being is [also] relevant," but "no single factor is required." *Id.* "For harassment to affect a term, condition, or privilege of employment, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and "the plaintiff must show *subjective awareness* of the hostility or abusiveness and that [her] *awareness is objectively reasonable*." *Clark,* 116 F.4th at 479 (5th Cir. 2024) (citing *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 433 (5th Cir. 2022)) (emphasis added).

Plaintiff fails to provide enough summary judgment evidence for a *prima facie* Title VII harassment case. The evidence, as it currently stands, fails to show Defendants' actions were based on Plaintiff's sex as the above-stated test's third prong requires. Like the case *sub judice*, the Fifth Circuit's *Gibson v. Verizon Services Organization, Inc.*, 498 F. App'x 391, 394 (5th Cir. 2012) opinion centered on a gender-based harassment dispute. There, the plaintiff sued her employer due to the actions of a male coworker. *Gibson*, 498 F. App'x at 393. This coworker allegedly "had a history of bullying women in the workplace;" "slung papers off his own desk, flung items off of his shelf, kicked a trash can and 'busted through 3 sets of double doors;'" "began yelling, screaming, and pushing, and throwing things;"[2] all in response to requests for assistance or information from the plaintiff. *Id.* The Court ultimately found when considering those allegations,

---

[2] Other instances occurred, but the Court states only the most relevant for brevity.

the plaintiff failed to "produce any summary judgment evidence, beyond her own subjective belief, that any of [the defendant's] conduct was based on sex." *Id*. at 394. Similarly, the only evidence other than her own subjective beliefs Plaintiff provides in the case *sub judice* are vague and contradictory testimony from coworkers.

Comparing the above case with the case at hand, most of Plaintiff's complaints against both Mayor Featherstone and Alderman Elder concern arguments with raised voices and profanity. None of those argument reach the apparent level of intensity as those in *Gibson*. Plaintiff makes an unsubstantiated allusion to the Mayor Featherstone having "a history of bullying women," but she never claims he "slung papers," "kicked a trashcan," or threw things. *Id*. at 393. Instead, both parties state he raised his voice and used profanity while arguing with Plaintiff [82-4, pp. 74-75; 82-3, p. 119]. The same holds true for the allegations against Alderman Elder. Despite an abundance of testimony revealing a strained and sometimes harsh relationship between Plaintiff, Mayor Featherstone, and Alderman Elder, Plaintiff fails to show those interactions were motivated by her sex. Rather, it appears to the Court these interactions resulted from the surface-level disagreement over Plaintiff's working from home. The only seemingly relevant evidence concerning sex discrimination is the "cojones" statement from the budget meeting, but this Court finds—while the statement is potentially "tinged" with bias—it is just too little to overcome summary judgment for a Title VII harassment claim. *Gibson*, 498 F. App'x at 394. Therefore, having failed to show a genuine issue of material fact exists concerning her harassment claim, the Court finds summary judgment is appropriate and her harassment claim must be dismissed.

### 2. *Constructive Discharge*

"Constructive discharge occurs when an employee is forced to involuntarily resign." *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 828 (5th Cir. 2019) (citing *Haley v. Alliance*

*Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004). To succeed on her constructive discharge claim, Plaintiff "must show working conditions so intolerable that a reasonable person would have felt compelled to resign." *Vallecillo v. U.S. Dep't of Hous. & Urban Dev.*, 155 F. App'x 764, 768 (5th Cir. 2005) (citing *Pa. State Police v. Suders*, 542 U.S. 129; see also, *Faruki v. Parsons*, 123 F.3d 315, 319 (5th Cir. 1997)) (other citations omitted) (internal quotation marks omitted). However, "[c]onstructive discharge requires a greater degree of harassment than that required by a hostile work environment claim." *Daywalker v. UTMB at Galveston*, No. 22-40813, 2024 WL 94297, *10 (5th Cir. Jan. 19, 2024) (citing *Brown v. Kinney Show Corp.*, 237 F.3d 556, 566 (5th Cir. 2001). Therefore, this Court need not conduct a full analysis for this claim because Plaintiff was unable to reach the lower degree of harassment required for her hostile work environment claim. As a result, summary judgment is proper for this claim as well.

### 3. Discrimination

"Both discrimination and retaliation claims under Title VII are subject to the *McDonnell Douglas* burden-shifting framework." *Jones v. Gulf Coast Rest. Group, Inc.*, 8 F.4th 363, 368 (5th Cir. 2021) (citing *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020)); see also *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, Plaintiff must first establish a *prima facie* case. *Id*. If accomplished, "the burden then shifts to [Defendant] to articulate a legitimate reason for the adverse employment action," and after providing such, "the burden then shifts back to [Plaintiff] to show that the reason is a pretext." *Id*. Plaintiff fails at the *prima facie* stage.

To properly establish a *prima facie* sex discrimination case, Plaintiff must show she

(1) belongs to a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside her protected group.

*Shahrashoob v. Tex. A&M Univ.*, 125 F.4th 641, 649 (5th Cir. 2025) (*citing Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 339 (5th Cir. 2021)). Defendants concede Plaintiff satisfies prongs one and two [77, p. 15].

Turning to prong three, it has already been established Plaintiff was not discharged, nor constructively discharged; therefore, she must show a genuine dispute of material fact exists as to whether she suffered some other adverse employment action. To adequately "plead an adverse employment action . . . plaintiff[s] need only allege facts plausibly showing discrimination in hiring, firing, compensation, or in the 'terms, conditions, or privileges' of his or her employment.'" *Hamilton v. Dallas Cnty*, 79 F.4th 494, 502-03 (5th Cir. 2023) (citing 42 U.S.C. § 2000-2(a)(1); *Hishon v. King & Spalding*, 467 U.S. 69, 77 (1984)). Plaintiff's claims are based in the broadly interpreted catchall "terms, conditions, and privileges of employment" category. *Id*. However, as already discussed, Plaintiff fails to plausibly allege facts showing discrimination regarding harassment or any other terms, conditions, or privileges of her employment.

Regarding prong four, while Plaintiff does allege male colleagues were treated more favorably, her support for these allegations falls quite short [83]. Specifically, Plaintiff argues:

> Males were provided autonomy; males' schedules were not watched; there was no interference in the day to day running departments with male directors/headed by males; males were not screamed and yelled at; profanity was not directed at males; comments were not made to males about genitalia; males were not made to be afraid in the workplace; and males were not questioned about their child's illness and disability status.

[83, p. 8]. To support these allegations, Plaintiff cites—with no page number references—to the testimony of Brayden Little [82-1], Kaneilia Williams [82-2; 82-16], Sam Brock [82-8], Carolyn O'Neal [82-10], and Orlando Battle [82-12]. Ms. O'Neal testified she was only aware of Mayor Featherstone talking in a disrespectful or rude way to herself and Plaintiff but not to their male counterparts [82-10, p. 11-12]. Yet, her answers are just as vague if not more vague than Plaintiff's

when asked to discuss specific instances of discriminatory conduct [*Id*. at pp. 11-14]. Mr. Brock noted the fire chief was never reprimanded for not regularly attending board meetings [82-8, pp. 23-24]. These are just samples of the greater record rife with hearsay, speculation, and ambiguity,[3] used to support these allegations, leaving this Court—after an extensive search of the record— without enough evidence to find a genuine issue of material fact concerning prong four. As a result of these findings, Plaintiff fails to make a *prima facie* case for discrimination, so no further analysis is necessary. Therefore, summary judgment is proper for this claim.

### 4. Retaliation

Plaintiff next brings a retaliation claim under Title VII. This analysis, due to Plaintiff's lack of direct evidence, also requires a *McDonnell Douglas* analysis as applied in the discrimination analysis above. *Johnson v. Iberia Med. Center Found*., No. 23-30159, 2023 WL 7703872, *3 (5th Cir. Nov. 15, 2023) (citing *Cardiel v. Apache Corp*., 559 F. App'x 284, 288 (5th Cir. 2014)). "To establish a prima facie case of retaliation, [Plaintiff] must show that (1) she engaged in conduct protected by title VII; (2) she suffered a materially adverse action; and (3) a causal connection exists between the protected activity and the adverse action." *Moye v. Tregre*, No. 22-30341, 2024 WL 65424, *3 (5th Cir. Jan. 5, 2024) (citing *Hudson v. Lincare, Inc*., 58 F.4th 222, 231 (5th Cir. 2023)) (internal quotation marks omitted). "To avoid summary judgment, the plaintiff must show a conflict in *substantial evidence* on the question of whether the employer would not have taken the action *but for* the protected activity." *Johnson*, 2023 WL 7703872 at *5 (emphasis added).

Regarding prong one, employees engage in protected activity if they have "opposed any practice made an unlawful practice" by Title VII. 42 U.S.C. § 2000e-3(a). "An employee's internal informal complaints of unlawful employment practices are sufficient to invoke the protections of

---

[3] *See, e.g.,* 82-10, pp. 26-28, 39-41, 44-45; 82-8, pp. 21-22, 32-33.

Title VII. However, the complaint must have been based on a reasonable good faith belief that the conduct violated Title VII." *Loomis v. Starkville Miss. Public School District*, 150 F.Supp.3d 730, 751 (N.D. Miss. 2015) (citations omitted). Plaintiff has failed to show she engaged in a Title VII protected activity. Her response memorandum [83] to Defendants' Motion for Summary Judgment [76] claims she "reported harassment and discrimination to the [board of aldermen]," but Plaintiff meagerly cites to her own deposition, and as before, without a page number, as support [83, p. 13]. As the Fifth Circuit has aptly stated, "Judges are not like pigs, hunting for truffles buried in briefs," and this Court is not required to do so to satisfy Rule 56. *U.S. v. Dunkel*, 927 F.2d 955, 956 (5th Cir. 1991). Plaintiff therefore has failed to show evidence she engaged in protected activity. However, as a precaution, the Court looks to whether Plaintiff can satisfy prong two: she cannot. As already discussed above, Plaintiff cannot point to enough evidence to create a genuine issue of material fact regarding any adverse action. Therefore, Plaintiff's retaliation claim fails on summary judgment, requiring dismissal.

### B. Equal Protection

Plaintiff next brings an equal protection claim under 42 U.S.C. § 1983 which also fails for lack of supporting evidence. "The Equal Protection Clause of the Fourteenth Amendment provides that '[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws.'" *Cook v. Hopkins*, 795 F. App'x 906, 914 (5th Cir. 2019) (citing U.S. Const. amend. XIV, § 1)). "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege "(1) she received treatment different from that received by similarly situated individuals and that (2) the unequal treatment stemmed from a discriminatory intent." *Id*. (citing *Fennell v. Marion Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015) (race-based equal protection claim)) (other citations omitted) (internal quotation marks omitted) (cleaned up). This analysis is a nonstarter because as already

established, Plaintiff failed to provide evidence to support she was treated differently based on her gender. See *supra* sections A(1)-(3). Therefore, summary judgment is proper regarding her equal protection claims.

## C. Conspiracy to Interfere with Civil Rights

Plaintiff next claims Mayor Featherstone and Alderman Elder conspired to interfere with her civil rights in violation of 42 U.S.C. § 1985. To succeed on her conspiracy claim, § 1985(3) requires Plaintiff allege:

> "(1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States."

*Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994) (citing *Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 757 (5th Cir. 1987)); see also, *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 410 (5th Cir. 2020). Further, "the plaintiff must show that the conspiracy was motivated by a class-based animus." *Id*. at 653 (citing *Burns-Toole v. Byrne*, 11 F.3d 1270, 1276 (5th Cir.), *cert. denied*, 512 U.S. 1207 (1994)); see also, *Angel v. La Joya Indep. Sch. Dist.*, 717 F. App'x 372, 379 (5th Cir. 2017). That said, a full analysis is not necessary for this claim because as already established, Plaintiff cannot show a genuine dispute of material fact exists regarding whether Defendants' actions were motivated by class-based (*i.e.*, gender) animus. Summary judgment is therefore proper for this claim.

## D. Americans with Disability Act (ADA)

Plaintiff next brings a discrimination and harassment claim under the ADA. "The ADA prohibits an employer from 'excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is

known to have a relationship or association.'" *Besser v. Tex. Gen. Land Office*, 843 F. App'x 876, 885-86 (5th Cir. 2020) (citing 42 U.S.C. § 12112(b)(4)).

## 1. *Discrimination*

While the Fifth Circuit has not "explicitly recognized a cause of action for discrimination based on association with a handicapped individual," that court has provided the *prima facie* factors some district courts deem necessary to prove that type action if it were viable. *Id.* at 886 (citing *Spencer v. FEI, Inc.*, 725 F. App'x 263, 267 (5th Cir. 2018) (per curiam)). The plaintiff would have to show: "(1) [her] qualification for the job, (2) an adverse employment action, (3) the employer's knowledge of the employee's disabled relative, and (4) that the adverse employment action occurred under circumstances raising a reasonable inference that the relative's disability was a determining factor in the employer's adverse action." *Id.* Out of an abundance of caution the Court considers this claim, despite the Fifth Circuit not explicitly recognizing it.

Plaintiff fails on prongs two and four. As already discussed in prior analyses, Plaintiff cannot show she was subject to an adverse employment action. Further, even if she could identify an adverse employment action, Plaintiff cannot show her son's illness was a motivation for that adverse action. As Defendants rightly pointed out, the Fifth Circuit has found "a material distinction between firing an employee *because of relative's disability* and firing an employee *because of the need to take time off* to care for the relative." *Besser*, 843 F. App'x at 887 (citing *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 510 (3rd Cir. 2009)) (internal quotation marks omitted) (emphasis added). Indeed, "the ADA does not require employers to accommodate non-disabled workers by restricting their work schedule or allowing them to miss work to care for a disabled relative." *Id.* (citing 29 C.F.R. Pt. 1630, App § 1630.8). Based on this statement, it is clear even if the Fifth Circuit recognized a discrimination claim grounded in an association with a

handicapped person, Plaintiff's allegations do not rise to the level necessary to create a genuine issue of material fact to overcome summary judgment.

### 2. Harassment

The Court bifurcates the discrimination and harassment claims here to mirror Title VII. Unlike ADA association discrimination, this Court can find no mention of an association harassment claim in the Fifth Circuit precedent, and it is unclear if any such claim actually exists in the Fifth Circuit. However, after an extensive search, the only case within this circuit mentioning that cause of action with any value is *Stuntz v. Wright Enrichment, Inc.*, Civ. Action No. 6:20-cv-00182, 2020 WL 5989176, *6 (W.D. La. Sept. 9, 2020); see also, *Hartman v. Lafourche Parish Hosp.*, 262 F.Supp.3d 391, 395 n.9 (E.D. La. 2017) ("Although Defendants argue for dismissal of an ADA harassment claim and failure to accommodate claim, Plaintiff states that she has not asserted either claim"). The court in *Stuntz*, however, did not separate the discrimination and harassment claim. *Id*. Instead, it mentions both claims but then conducts only an associational discrimination analysis, never again mentioning harassment. *Id*. at *6-7. Outside the Fifth Circuit, courts have recognized a stand-alone ADA association harassment claim, albeit sparsely. *Clem v. Case Pork Roll Co.*, Civ. Action No. 15-6809, 2016 WL 3912021, *3 (D. N.J. July 18, 2016); *Zako v. Encompass Digital Media, Inc.*, No. 3:19-cv-844, 2020 WL 3542323, *14 (D. Conn. June 30, 2020).

Notwithstanding the above, even if the Fifth Circuit recognizes a stand-alone, association harassment claim under the ADA, Plaintiff will be unable to meet that standard. At some point in the analysis Plaintiff would be required to show a nexus between Defendants' actions and her son's illness. As has already been stated, the record evidence cannot sustain any such nexus. Further, Plaintiff fails to provide any useful caselaw on this point. The Court particularly takes issue with

the purported quotation from *Silver v. City of Alexandria*, 470 F.Supp.3d 616, 628 (M.D. La 2020). Plaintiff's counsel "quoted" from that case, "'An employer may not subject an employee to a hostile work environment or adverse treatment because of their relationship with someone with a disability'" [83]. No such quotation exists in *Silver* nor any other case in the United States this Court could find after an extensive Westlaw, Lexis, and Google search. This of course casts a pall of doubt across Plaintiff counsel's research and arguments; however, this Court is satisfied with its own research to move forward with the conclusion below. As supported above, Plaintiff could not succeed on an association harassment claim via the ADA if such claim existed. Therefore, summary judgment is proper for both of Plaintiff's ADA claims.

### IV.    Conclusion

For all the foregoing reasons, the Court finds Defendants' Motion for Summary Judgment [76] should be granted, dismissing each of Plaintiff's claims.

An order in accordance with this opinion shall issue this day.

THIS the 13th day of March 2025.

_____
SENIOR U.S. DISTRICT JUDGE